## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**TERRY ALLEN COUNTS**, and
**TERRY LYNN COUNTS**,

Debtors.

Case No. **07-60542-13**

## *MEMORANDUM of DECISION*

At Butte in said District this 6th day of September, 2007.

In this Chapter 13 bankruptcy, after due notice, a hearing was held August 14, 2007, in Butte on confirmation of Debtors' First Amended Chapter 13 Plan filed August 8, 2007, and on Debtors' Motion for Valuation of Security filed July 19, 2007. The Chapter 13 Trustee, Robert G. Drummond of Great Falls, Montana appeared at the hearing, along with attorney Richard A. Ramler of Belgrade, Montana, who appeared on behalf of the Debtors, and attorney Jon R. Binney of Missoula, Montana, who appeared on behalf of Capital One Auto Finance ("Capital One"). Debtor Terry Lynn Counts testified and Debtors' Exhibits 3, 4 and 5 were admitted into evidence without objection.

This Court has jurisdiction over the above matters pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (L). For the reasons stated in this Memorandum of Decision, the Court sets the value of Debtors' 2001 Dodge at $9,500.00, denies confirmation of Debtors' First Amended Chapter 13 Plan and grants Debtors time to file a further amended Chapter 13 plan consistent with this Memorandum of Decision.

1

The Trustee filed a written objection to confirmation of Debtors' First Amended Chapter 13 Plan on August 9, 2007, setting forth two arguments as to why Debtors' First Amended Chapter 13 Plan should not be confirmed. The Trustee represented at the hearing that the first of his two objections was cured. Thus, the Trustee's sole remaining objection to Debtors' First Amended Chapter 13 Plan is that Debtors are inappropriately attempting to litigate the amount of Capital One's claim through the confirmation process. As reflected in the Trustee's remaining objection, whether Debtors' First Amended Chapter 13 Plan meets the criteria for confirmation is dependent upon the outcome of Debtors' pending Motion for Valuation of Security.

In their Motion for Valuation of Security, Debtors seek to set the amount of Capital One's allowed secured claim at $7,140.00. Capital One counters that its claim should be allowed as filed in the amount of $12,239.90 because the "claim is a purchase money security interest in a motor vehicle incurred within 910 days of the filing date and cannot be crammed down pursuant to 11 U.S.C. [§] 1325(a)". In the event the Court overrules Capital One's argument that Debtors must provide for the full amount owing Capital One on its claim under § 1325(a), Capital One argues that Debtors are required to nevertheless pay Capital One at least the fair market retail value of Debtors' 2001 Dodge.

Capital One's primary argument is premised on a paragraph that immediately follows § 1325(a)(9) and was added to the United States Bankruptcy Code by the Bankruptcy Abuse and Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005) ("BAPCPA"). Because of its lack of a numerical or alphabetical designation, courts have termed the paragraph following § 1325(a)(9) as the "hanging paragraph." The hanging paragraph reads as follows:

2

> For purposes of paragraph (5), section 506 shall not apply to a claim described in
> that paragraph if the creditor has a purchase money security interest securing the
> debt that is the subject of the claim, the debt was incurred within the 910-day
> [period] preceding the date of the filing of the petition, and the collateral for that
> debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired
> for the personal use of the debtor[.][1]

The applicable subsection of § 506 is § 506(a)(1) which provides that "[a]n allowed claim of a
creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to
the extent of the value of such creditor's interest in the estate's interest in such property[.]"

The parties agree that Capital One's claim stems from a purchase money security interest
in a motor vehicle that Debtors purchased within the 910-day period preceding Debtors' May 18,
2007, petition date. The sole dispute between Debtors and Capital One is whether the vehicle at
issue, a 2001 Dodge, was acquired for Debtors' personal use.  Debtor Terry Lynn Counts
("Terry") testified that Debtors purchased the 2001 Dodge for Terry to use in her business, TLC
Home Care & House Cleaning.  Debtors deduct Terry's use of a car for her business on their
income tax returns.  In particular, Debtors' Schedule C to Form 1040, Profit or Loss From
Business (Sole Proprietorship), attached to their 2005 Federal tax return shows that in 2005, Terry
drove a vehicle 9,282 miles for business purposes, 514 miles for commuting and 5,204 miles for

---

[1]  As noted by Judge Markell in *In re Trejos*, 352 B.R. 249, n.17 (Bankr. D.Nev. 2006):

The hanging paragraph has within it an obvious syntactical error-the phrase "within the
910-day preceding the date of filing" was probably meant to say "within the 910-day
*period* preceding the date of filing," or "within 910 days preceding the date of filing,"
although nothing in this case turns on this infelicity. The difficult interpretive questions
arise when trying to fit the hanging paragraph into the context of the preexisting
provisions of chapter 13.

3

other.[2]  Debtors' Schedule C for 2006 similarly reflects that Terry drove her vehicle 8,975 miles for business, 514 miles for commuting and 5,511 miles for other.  Based upon Debtors' business use of the 2001 Dodge, Debtors argue that the hanging paragraph in § 1325(a) does not apply and that Debtors should be allowed to cramdown Capital One's allowed secured claim.

The eight words contained in the phrase "acquired for the personal use of the debtor" as set forth in § 1325(a) have sparked an amazingly large amount of litigation, which litigation has resulted in decisions that purport to follow two separate schools of thought.  Prior to enactment of BAPCPA, a debtor in a Chapter 13 bankruptcy could bifurcate a claim secured by the debtor's automobile into a secured claim up to the value of the automobile and into an unsecured claim for the remainder of the claim that was above and beyond the value of the automobile.  BAPCPA and the hanging paragraph of § 1325(a) now curtail a debtor's ability to bifurcate and cramdown a claim where the creditor holds a purchase money security interest in a motor vehicle that was purchased within 2 and one-half years, or 910-days, of the debtor's petition date if the motor vehicle was acquired for the debtor's personal use.

Neither Debtors nor Capital One cite to a single case in support of their respective positions on whether Debtors' 2001 Dodge was acquired for Debtors' personal or business use.  Thus, the Court conducted its own research.  At first blush, it appeared that the majority of courts were following two separate and distinct standards for determining whether a motor vehicle was acquired for personal or business use of the debtor.  The first standard has been referred to as the

---

[2]  According to the Secretary of States Office for the State of Montana, Terry started TLC Home Care & House Cleaning in August of 2004, which explains why Part IV of Debtors' Schedule C shows that the vehicle was placed in service for business purposes on 8/1/2004. Such date was apparently not amended to reflect the October 2005 purchase of the 2001 Dodge.

4

significant and material standard as espoused in *In re Solis*, 356 B.R. 398 (Bankr. S.D.Tex. 2006),

while the second standard has been referred to as the totality of the circumstances standard as

adopted in *In re Johnson*, 350 B.R. 712 (Bankr. W.D.La. 2006).  While the courts in *Solis* and

*Johnson* clearly adopted different standards in reaching their respective decisions, it does not

appear that the significant and material standard and the totality of the circumstances standard are

as separate and distinct as thought by some courts.

One of the earlier cases to grapple with whether a vehicle was acquired for a debtor's

personal use was *In re Lowder*, 2006 WL 1794737 (Bankr. D.Kan. 2006) (slip copy).  In *Lowder*,

the debtor used her car to travel to and from work, to do personal shopping and to run personal

errands.  *Id.*  As further explained by the court in *Lowder*:

> There is no public transportation readily available to [the debtor's] work site, and,
> without her car, Debtor would be unable to get to work. Her employer does not
> require her to have a car as part of her employment, and she does not use it within
> the scope of her employment. Likewise, she does not use the car in any other
> business, occupation or profession. Further, her employer does not contribute to
> the payment of, or pay for, car or insurance payments, gasoline, maintenance costs
> or for repairs.

Armed with the above facts, the court in *Lowder* concluded that merely acquiring a vehicle

for the debtor's "own use, with one of the uses contemplated being to drive to and from work, is

not for 'business' purposes; it is for personal use":

> When a debtor can establish that a vehicle has been acquired for business
> purposes, the hanging paragraph in § 1325(a) will not apply. That debtor will be
> able to bifurcate the claim into a secured and unsecured portion and pay only the
> value of the vehicle, with interest. Conversely, when the evidence shows that a
> vehicle was acquired for non-business, or the "personal," use of the debtor,
> bifurcation is impermissible.

*Id*. at *3-4.  The *Lowder* Court explicitly cautioned that if "a vehicle is not used within the scope

of employment and the vehicle is acquired for the joint purpose of traveling to and from work and for conducting a debtor's private affairs, it is properly classified as 'personal use' for purposes of the Bankruptcy Code." *Id*. The court in *Lowder,* however, recognized:

> [T]hat there may be situations where an automobile is used almost exclusively for business purposes, but may be used for personal use in a completely de minimis amount, such as a case where a debtor uses an automobile in his business, but occasionally stops to purchase a gallon of milk on his way home from work. The outcome in such a case may differ from that in this case. However, because the personal use of the automobile in this case is clearly more than de minimis, the Court need not address that issue at this time.

*Id*. at *4, n.25. The *Lowder* reasoning was most recently followed in *In re Grimme*, — B.R. —, 2007 WL 2245802 (Bankr. S.D.Ohio July 13, 2007) ("we believe, as did the Court in *In re Lowder*, 2006 WL 1794737 (Bankr. D.Kan. 2006), that the term 'personal use' means, simply, non-business use").

Shortly after the *Lowder* decision, the court in *Johnson,* 350 B.R 712, provided its interpretation of the term "personal use" as set forth in § 1325(a). In *Johnson*, the debtors purchased the motor vehicle in question for one of the debtors to drive to and from work. In reaching its ultimate decision in that case, the court declined to apply the Internal Revenue Service standards for determining whether a motor vehicle was acquired for the personal use of the debtor and also rejected the debtors' argument that applicable exemption statutes were determinative for purposes of resolving the personal versus business use issue.

The court in *Johnson* also supposedly declined to adopt a bright line test for resolving the business versus personal use issue and instead concluded that such matter should be determined by the totality of circumstances. *Id*. at 715. The court then went on to explain that "[a]lthough no litmus test is afforded for deciding the business versus personal issue, the court is able to provide

6

some guidance regarding the factors which should be considered in evaluating the totality of the

circumstances." *Id.* at 715-16.  Interestingly, the court in *Johnson* provided little guidance with

respect to the factors it considered when it examined the totality of the circumstances.  The

*Johnson* court did conclude, however, that the determination as to whether a motor vehicle was

acquired for personal use should be made as of the date the motor vehicle was purchased, and not

the debtors' petition date.  *See also In re Solis*, 356 B.R. at 408-09 (the phrase "acquired for"

suggests that courts determine the intention of debtors at the time the vehicle was acquired).  The

court then proceeded to reach its ruling by considering a single factor; whether the acquisition of

the vehicle enabled the debtor to make a significant contribution to the gross income of the family

unit." *Id.* at 716.  In concluding that the debtors had acquired the vehicle at issue for business

purposes, the court wrote:

> At the time the vehicle was acquired, the court finds that Ms. Johnson's
> employment made a significant contribution to the family's gross income.  The
> vehicle not only facilitated that contribution, the ability of Ms. Johnson to obtain
> those earnings was dependent upon the vehicle.  Accordingly, the court holds that
> the vehicle was not acquired for the personal use of the Debtors within the
> meaning of the hanging paragraph, and, therefore, the anti-cramdown provision
> does not apply.

*Id.*

The one-factor test utilized in *Johnson* appears, in this Court's opinion, to be a bright line

test that does not require consideration of the totality of the circumstances.  Under the *Johnson*

test, if a debtor uses a vehicle to drive to and from work, and thus earn a wage that makes a

significant contribution to the gross income of the debtor's family unit, the vehicle will not be

considered a "personal use" vehicle under § 1325(a).  That test is quite broad when one considers

that all persons seeking relief under Chapter 13 must have "regular income."  *See* 11 U.S.C. §

7

109(e).  I believe that almost all debtors filing under Chapter 13 could make the argument that their motor vehicle enabled the debtor to make a significant contribution to the gross income of the family unit.  Such logical extension of the *Johnson* test would seem to render the hanging paragraph a nullity.

Six weeks after deciding *Johnson*, the bankruptcy court for the Western District of Louisiana issued another decision on the personal versus business use issue.  *See In re Hill*, 352 B.R. 69 (Bankr. W.D.La. 2006).  The factual scenario in *Hill*, involving joint debtors, was summarized as follows:

> Mrs. Hill testified that she is required by her employment to have a vehicle in order to get to and from work.  She is not required to have a vehicle during the course of the day at her employment.  She further testified that sometimes she drives the truck to and from work and sometimes her husband drives her to work and uses the vehicle for personal family purposes and picks her up from work at the end of the day.

*Id*. at 73.  Based upon the foregoing facts, Judge Schiff, in *Hill,* as in *Johnson*, once again concluded:

> In the instant case, the use of the vehicle is mixed, both personal and business.  By "business use," the court includes the utilization by the Debtors in generating income for their maintenance and support. . . .
>
> Considering the totality of the circumstances, the court concludes that the vehicle which stands as collateral for the claim held by [the creditor] was not acquired for the personal use of the debtor.

*Id*. at 74.  In other words, in Judge Schiff's opinion, the concept of "business use" includes the debtor's utilization of a vehicle for the generation of income.[3]

---

[3]  In discussing the holding in *Hill*, the court in *Solis* wrote:

Notwithstanding its reference to all the facts and circumstances, *Hill* would seem to require that a court first determine whether the vehicle enables the debtor to make a

8

The bright-line test adopted in *Johnson* and *Hill* was similarly adopted by Judge Schmidt in *In re Medina*, 362 B.R. 799 (Bankr. S.D.Tex. 2007) ("the Court finds that the Vehicle was not acquired for personal use because from the time of purchase, [the debtor] used the vehicle for transportation to and from her employment"), and *In re Martinez*, 363 B.R. 525 (Bankr. S.D.Tex. 2007) ("Having considered all the scholarly approaches to the conundrum provided by Congress, this Court believes that the totality of the circumstances/significant contribution test best utilizes the Hanging Paragraph.")

Shortly after the term "personal use" was interpreted in *Johnson* and *Hill*, Judge Magner from the Eastern District of Louisiana was called upon to examine the scope of the term "personal use" as found in § 1325(a).  *See In re White*, 352 B.R. 633 (Bankr. E.D.La. 2006).  In *White*, the debtor had stipulated that she used her motor vehicle to travel to and from work as well as for all other general transportation needs.  *Id.* at 640.  The debtor in *White*, relying on Louisiana's exemption laws, argued that her vehicle was a tool of the trade under Louisiana law because she used the vehicle to drive to and from work, and therefore, the vehicle was "not a vehicle for personal use".  *Id.*  The court in *White* rejected the debtor's argument, concluding that "the purpose of the [Louisiana] statute is not to distinguish between personal and business use, but to carve out a category of personal property exempt from seizure so that Debtor may continue to earn a living without risk of becoming a burden on the state."  *Id.* at 641.  The court in *White* also noted that driving a vehicle to and from work did not, "under the IRS regulations, make the vehicle a

---

significant contribution to the gross income of the family unit; *Hill* would look at all the facts and circumstances only if the answer to the first question was a "no".

*Solis*, 356 B.R. at 408.

business asset." *Id.*

Declining to adopt the debtor's argument, particularly in light of the IRS guidelines, the court instead determined that "common sense should guide" and turned to the definition of "personal" as found in the AMERICAN HERITAGE DICTIONARY, and concluded:

> Debtor acquired her vehicle for both personal use and for transportation to and from work.  Given that she did not use the vehicle for business after she arrived at her employment, received no reimbursements from her employer for its use, and deducted no expenses from her income for tax purposes, the Court cannot conclude that the vehicle is a business asset.

*Id*.  Interestingly, the court in *White* made not a single reference to either *Johnson* or *Hill*, but instead adopted a standard that is virtually indistinguishable from the standard articulated in *Lowder*, 2007 WL 1794737.

The issue of personal versus business use was again addressed in *In re Solis*, 356 B.R. 398. In *Solis*, the debtor and her nondebtor spouse acquired a truck within 910-days of the debtor's petition date.  The truck was the debtor and her spouse's sole means of transportation, and was thus a family vehicle.  While the debtor also used the vehicle to drive to and from work, the nondebtor spouse used the truck to pull a trailer for his disc jockey business; a business that was started sometime after the debtor and her spouse purchased the truck.  *Id.* at 402-03.  The court in *Solis* rejected the debtor's argument that the truck was acquired for a business purpose and in doing so, identified six criteria that would not "emasculate" the 2005 amendment to § 1325(a), which factors are to be considered in light of "all of the facts and circumstances of the case", *i.e.*, the totality of the circumstances:

> [T]he "hanging paragraph" of § 1325 applies to a vehicle claim if:
>
> (1) the claim is secured by a purchase money security interest,

10

(2) the debt was incurred within 910 days prior to the filing of the
bankruptcy case,
(3) the collateral is a motor vehicle, and
(4) at the time of the acquisition the acquirer intended that a significant,
material portion of the use of the vehicle would be[:]
      (a) for the benefit of the debtor(s) in the bankruptcy case,
      (b) for non-business purposes, and
      (c) for satisfaction of debtor(s)' wants, needs, or obligations.

*Id.* at 411.  As for the particular aspect of § 1325(a) applicable in this case, the court in *Solis*

explained:

The Court agrees with the almost universal conclusion that "personal" implies
"non-business". Therefore the Court would agree with *Lowder' s* interpretation of
*Runski:* that a vehicle acquired exclusively for business use is not a vehicle
acquired for personal use. But, just as there is no bright or gray line for the Court
to use when comparing proportionte use by a debtor and use by a nondebtor,
there is no guidance in the statute concerning what percentage of business use
(less than 100%) would disqualify the vehicle as a 910 Vehicle. The words
"solely", "exclusively", "mostly", "primarily", "partially" or any other type of
quantitative requirement do not appear in the hanging paragraph in this context,
either. Having no guidance from the statute, the Court will adopt its best estimate
of a reasonable conclusion. The Court will determine that the "personal use"
requirement of the statute is satisfied if the personal use of the debtor is significant
and material, regardless of whether there is also some business use.

    . . . "Personal" use and "family or household" use are not different or
mutually exclusive. The chapter 13 debtor is always a person, and when the debtor
has a family it would be virtually impossible to distinguish "family" use from
"personal" use.  And, even if "personal" "family" and "household" were mutually
exclusive as to any one event or activity, the same vehicle could provide "family
or household" benefits on some trips and could provide "personal" benefits on
other trips. Therefore, the Court concludes that "personal use" includes any use of
the vehicle that benefits the debtor(s) such as transportation that satisfies personal
wants (such as recreation), transportation that satisfies personal needs (such as
shopping or seeking medical attention or other errands), and transportation that
satisfies family and other personal obligations, whether legal or moral obligations.
The Court concludes that "personal use" includes transportation to and from work
in almost all circumstances since there is almost always an alternative such as
walking, bicycling, public transportation, carpooling, obtaining housing closer to
the workplace, *etc.* In circumstances in which there is an alternative, the decision
to use an automobile is a personal use: to make the trip faster, more pleasant, and

> more convenient. But if there is truly no alternative, the Court would not conclude
> that the use of a vehicle to go to and from work was "personal use" of the vehicle.
> This Court will consider all of the facts and circumstances to determine whether
> the vehicle was acquired with the intent of providing personal benefits for the
> debtor(s).

*Solis*, 356 B.R. at 409-10.  The reasoning in *Solis* was later adopted and applied in *In re Wilson*,

2006 WL 3512921 (Bankr. D.Kan. 2006) (not reported in B.R.) ("upon acquisition, Debtors

intended that a significant and material portion of their use of both [vehicles] would be for the

personal use and benefit of both Debtors").

In the spring of 2007, two separate judges from the Eastern District of Virginia again

tackled the personal versus business use issue.  *In re Lorenz*, 368 B.R. 476 (Bankr. E.D.Va. 2007),

and *In re Phillips*, 362 B.R. 284 (Bankr. E.D.Va. 2007).  In *Phillips*, the debtor sought to avoid the

impact of § 1325(a)'s hanging paragraph by arguing that her vehicle was used almost solely for

her family, and not the debtor's own personal use.  Judge St. John in *Phillips,* in rejecting the

debtor's position, was strongly persuaded by the reasoning used in *Lowder, supra*, which

reasoning was, in large part, based upon the Fourth Circuit Court of Appeals prior interpretation of

the term "personal, family or household use" found in § 722:

> The Fourth Circuit Court of Appeals has previously advanced its interpretation of
> the term "personal use," albeit in the different bankruptcy statutory context of
> Section 722 of the Bankruptcy Code in *Runski*. In so doing, the decision there
> viewed the phraseology of Section 722 of "personal, family, or household use" as
> representing three categories of goods subject to some degree of possible overlap
> but critically concluding the term "personal use" was use of a non-business nature
> without profit motive. [*Cypher Chiropractic Ctr. v. Runski] (In re Runski)*, 102
> F.3d 744, 747 (4th Cir. 1996).

*Phillips*, 362 B.R. at 303.  In particular, the court in *Phillips* concluded that the debtor's use of her

vehicle for family and household purposes was for a non-business or non-profit making purpose,

12

and was thus personal.  The court in *Phillips* also agreed with the reasoning set forth in *Solis*:

> This Court agrees with the rationale of Judge Steen set forth in *Solis* that use of a vehicle for commuting to work is largely a matter of personal choice and not a business usage except in the most rare circumstances. *In re Solis*, 356 B.R. at 410.
>
> The Court also agrees with Judge Steen's view that the lack of use by Congress of a modifier such as "sole" or "exclusive" preceding the term "personal use" is indicative of the lack of authority to interpret the "hanging paragraph" as requiring that the vehicle be used only the debtor and not by or for any other member's of the debtor's household. *See In re Solis*, 356 B.R. at 409. Thus, for the same reasons as expressed above, the Court declines to adopt Phillips' suggestion that the Court read a word such as "sole" or "exclusive" into the "hanging paragraph."
>
> Finally, even if there is a basis to characterize a portion of Phillips' use of the Automobile as distinct "family or household use," application of the test suggested in *In re Solis* in the instance of a vehicle acquired for mixed use of whether the personal use is material or significant indicates here the personal use of the Automobile by Phillips easily satisfies this criteria. Accordingly, the Court concludes that, based on the totality of the evidence, the Automobile was acquired by Phillips for personal use, and the "hanging paragraph" of Section 1325 applies to prohibit the bifurcation of the [creditor's] Claim.

*Phillips*, 362 B.R at 305.

*In re Lorenz*, 368 B.R. 476 (Bankr. E.D.Va. 2007), followed shortly after *Phillips*.

However, *Lorenz* involved a debtor who purchased a truck for his family and business needs.

Following the reasoning of *Phillips*, the court in *Lorenz* quickly concluded that use of the truck for

the debtor's family needs constituted personal use.  Then turning its focus on debtor's business use

of the truck, the court in *Lorenz* rejected the predominate use test articulated a month prior in *In re*

*Joseph*, 2007 WL 950267 (Bankr. W.D.La. 2007),[4] and as in *Phillips*, followed the reasoning set

---

[4]  Judge Adams in *Lorenz* explained that "[w]ith all due respect, it seems to us that the *Hill*, *Johnson*, and *Joseph* courts attempted to define 'personal use' by determining what it was not, which does not track the Plain Meaning Rule as closely as attempting to define what personal use is." *Id.*, 2007 WL 1189608 at *8.

13

forth in *Solis*, concluding that the issue was "Did the debtor purchase the vehicle with the intent to materially and significantly meet their own personal needs, regardless of any other intentions he may have had?" *Lorenz*, 368 B.R. at 486. According to the court in *Lorenz*, the answer to the foregoing question was a "resounding yes":

> The debtor admitted the he purchased a vehicle that was large enough to accommodate his entire family, in which to take his children to and from school, daycare, church, shopping, doctor's appointments and extra curricular activities. Lorenz Aff. ¶¶ 1.A.a.-g., 2. Just as the debtors in *In re Solis* and *In re Wilson,* the debtor herein used this vehicle to meet his personal needs in a material and significant way, notwithstanding his clear business uses as well. Additionally, the Retail Installment Sale Contract, signed by the debtor at the time of purchase indicates that the truck would be used for personal, family, or household purposes, despite the fact that it could have been noted that it was being purchased for business purposes. While this fact alone is not dispositive, it is also not insignificant. This was the debtor's personal vehicle as well as his work truck. The Court finds that he acquired it to meet his personal transportation needs and is precisely the type of vehicle indicated in the "hanging paragraph". As such, the "hanging paragraph" prohibits the debtor from bifurcating his claim.

*Lorenz*, 368 B.R. at 486-87.

As mentioned above, the court in *Lorenz* disagreed with the approach taken by the court in *In re Joseph*, 2007 WL 950267 (Bankr. W.D.La. 2007) (slip copy). In *Joseph*, the debtors purchased a car that one of the debtors used as transportation to and from her place of employment. However, the debtor did not use the car in conjunction with a business, did not use her car once she arrived at work, and did not claim a business deduction with respect to the car. *Id.*, 2007 WL 950267 at *5. The court in *Joseph* rejected the debtors' argument that the car was used for business purposes and instead agreed with the reasoning of *Solis*, *Wilson*, *White* and *Lowder*, concluding that "because most vehicles are used for a mixture of business and personal use, the court will consider the 'totality of the circumstances' in determining the predominate use

14

of the vehicle. . . .  If the evidence shows that the business use of the vehicle predominates–even if the debtor uses the vehicle for personal purposes to a lesser extent–then the hanging paragraph does not apply."

Interestingly, the court in *Joseph* implicitly rejected *Hill* and *Johnson*.  However, the court, purportedly agreeing with the reasoning of *Solis*, took an approach that is arguably contrary to *Solis* by inserting the modifier "predominantly" in its analysis.   As mentioned earlier, the court in *Solis* specifically noted the absence of a quantitative requirement such as "solely", "exclusively", "mostly", "primarily" or "partially".  *See also, Phillips*, 362 B.R. at 305 ('the Court declines to adopt Phillips' suggestion that the Court read a word such as 'sole' or 'exclusive' into the 'hanging paragraph.'")

Six of the cases cited above, namely, *Joseph, Medina, Martinez, Solis, Hill, and Johnson*, stem from two districts: the Western District of Louisiana and the Southern District of Texas.  Judge Summerhays from the Western District of Louisiana in *Joseph,* agreed with the reasoning of *Solis, Lowder*, *White* and *Wilson*, and thus implicitly declined to follow the business versus personal use rule utilized in *Johnson* and *Hill,* which two decisions were previously decided in the Western District of Louisiana.  Similarly, Judge Schmidt in *Medina* and *Martinez*–cases stemming from the Southern District of Texas, agreed with *Johnson* and *Hill,* and flatly rejected the business versus personal use rule adopted in *Solis*, a case also stemming from the Southern District of Texas.

As illustrated above, the issue of whether a vehicle meets the personal use standard of the hanging paragraph of § 1325(a) has been problematic for the bankruptcy courts.  After careful consideration of the cases cited herein, it appears that bankruptcy courts have used one of three

tests to determine whether a vehicle was acquired for the personal use of a debtor.  The first test is the liberal test adopted in *Johnson,* which considers whether "acquisition of the vehicle enabled the debtor to make a significant contribution to the gross income of the family unit."  The court in *Johnson* did not clarify whether the debtors in that case owned more than one vehicle, but did state that the vehicle in question was used for business and personal use.  However, the court in *Johnson* nevertheless concluded that the vehicle in question was acquired for business purposes because the debtors purchased the vehicle for the *primary* purpose of allowing one of the debtor's to drive to and from work, which thus allowed such debtor to make a significant contribution to the gross income of the family unit.  Based upon the foregoing holding, this Court presumes that the vehicle in question was used *primarily* for driving to and from work and not for other personal purposes.  The holdings in *Hill, Medina ,*and *Martinez* are similar in that all three courts imply that the level of personal use is irrelevant where the debtor uses the car to get to and from work, thus permitting the debtor to generate income for maintenance and support.

The second test was articulated by the court in *Solis* and focuses on whether the debtor acquired the vehicle with the intent to materially and significantly meet their own personal needs, as determined by examining the totality of the circumstances.  This Court would consider the *Solis* test to be a more subjective test than either the bright-line test used by the court in *Johnson,* or the third test discussed below.

The third test is the quantitative approach taken by the court in *Joseph,* where the court focused on the predominate use of the debtor's vehicle.  According to WEBSTER'S THIRD INTERNATIONAL DICTIONARY, the term predominance means "numerical superiority" while the term predominate means "to hold advantage in numbers or quantity".  Based upon the plain

16

meaning of predominance and predominate, this Court would conclude that under *Joseph*, a debtor's use of a 910-vehicle for business purposes 51% of the time would remove the vehicle from the grasp of the hanging paragraph found in § 1325(a).

In the case *sub judice*, Terry's use of the vehicle in connection with her business of caring for elderly and disabled persons and for cleaning homes would certainly satisfy the standard utilized in *Johnson* and its progeny. In particular, it appears from Debtors' Schedules I and J that Terry's contribution of $1,425.00 to Debtors' average monthly net income of $3,175.00 is significant. Similarly, Debtors' use of the 2001 Dodge would also render the hanging paragraph of § 1325(a) inapplicable under the *Joseph* test where the inquiry focuses on the predominant use of the vehicle. Under the facts in this case, it is clear from Debtors' Exhibits 3 and 4 that Debtors predominantly used the 2001 Dodge in connection with Terry's business, TLC Home Care & House Cleaning.

The more difficult inquiry is under the *Solis* test, which focuses on whether a debtor's personal use of a vehicle is substantial and material under the totality of the circumstances.[5] However, this Court concludes that the *Solis* Court would have determined that the hanging paragraph of § 1325 did not apply. The court in *Solis* concluded that "the 'hanging paragraph' of § 1325 applies to a vehicle claim if . . . at the time of the acquisition the acquirer intended that a significant, material portion of the use of the vehicle would be . . . for non-business purposes".

Unlike other courts, such as the court in *Joseph*, this Court does not know if Debtors' retail installment contract discloses whether the 2001 Dodge was being acquired for personal or

---

[5] The inquiry under *Lowder* could arguably be whether Debtors' personal use of the 2001 Dodge is de minimis.

17

business use.  However, what this Court does have is Terry's uncontested testimony that the 2001

Dodge was acquired because Terry needed a vehicle that was dependable with 4-wheel drive that

Terry could use to get to her various jobs associated with TLC Home Care & House Cleaning.

Terry's testimony is supported by the fact that Debtors claimed a business deduction with respect

to the 2001 Dodge on their 2005 and 2006 income tax returns.

Moreover, unlike cases where the debtors have only one motor vehicle in the household,

Debtors' Schedule B reflects that Debtors own four motor vehicles: a 1979 Chevy Truck; a 1987

Ford F250, a 1990 Chevy Cavalier; and the 2001 Dodge Durango.  The fact that Debtors own

more than one motor vehicle suggests that the 2001 Dodge Durango is not necessarily needed to

satisfy Debtors' personal needs.

In sum, this Court concludes that Debtors' acquired the 2001 Dodge for business purposes,

and thus, the hanging paragraph of §1325 does not apply.  With regard to the valuation of secured

collateral pursuant to 11 U.S.C. § 506(a), "the value of property retained because the debtor has

exercised the § 1325(a)(5)(B) 'cram down' option is the cost the debtor would incur to obtain a

like asset for the same 'proposed...use.'" *See Associates Commercial Corp. v. Rash*, 520 U.S. 953,

117 S.Ct. 1879, 138 L.Ed.2d 148 (1997).  The Supreme Court in *Rash* explained that

"replacement value" is the price a willing buyer in the debtor's trade, business or situation would

pay a willing seller to obtain property of like age and condition.  Such definition is synonymous

with the Ninth Circuit's definition of "fair market value" in *In re Taffi*, 96 F.3d 1190 (9th Cir.

1996).

The value of $7,200.00 proposed by Debtors does not meet the *Rash* definition of value

under § 506(a), but is instead the trade-in value of the 2001 Dodge.  Debtors' Exhibit 5 shows that

the 2001 Dodge had a retail value of $9,250.00 on August 1, 2007.  Counsel for Capital One

argued that the value of $9,250.00 does not accurately reflect the value of the 2001 Dodge as of

May 18, 2007, the date Debtors filed their bankruptcy petition, because time had passed and

because Debtors had put additional mileage on the vehicle.

Per Exhibits 3 and 4, Debtors purportedly drive the 2001 Dodge 15,000 miles per year, or

41.1 miles per day.  Seventy four days lapsed between the date Debtors filed their bankruptcy

petition and August 1, 2007, the date Debtors valued the 2001 Dodge.  If Debtors drove the 2001

Dodge 41.1 miles each of those seventy four days, Debtors would have put approximately 3,040

additional miles on the 2001 Dodge between May 18, 2007, and August 1, 2007.

On September 5, 2007, the Court used the NADA website and input the same information

as contained on Debtors' Exhibit 5, including mileage of 94,773, and obtained a retail value of

$9,125 on Debtors' 2001 Dodge.  The Court then used all the same information as above, except

reduced the mileage by $3,040 miles, and still obtained a retail value of $9,125.00 for Debtors'

2001 Dodge.  The mileage thus did not impact the value of Debtors' 2001 Dodge.  However, the

passage of time did impact value.  Specifically, the retail value of Debtors' 2001 Dodge dropped

$125.00 between August 1, 2007, and September 5, 2007, a period of 36 days.  As noted earlier,

there were seventy four days between May 18, 2007, and August 1, 2007.  Thus, the Court

concludes that the retail value of Debtors' 2001 Dodge would have been roughly $250.00 more

than what is stated on Exhibit 5, or $9,500.00.  The foregoing amount is the cram-down value of

the 2001 Dodge under § 506(a).

With respect to confirmation, Debtors' First Amended Chapter 13 Plan filed August 8,

2007, provides that the allowed amount of Capital One's secured claim is only $7,200.00 rather

than $9,500.00. Debtors' failure to provide for the full amount of Capital One's allowed secured claim renders Debtors' First Amended Chapter 13 Plan nonconfirmable.

Additionally, the Court would note that Debtors are, per Schedule J, making a monthly payment of $250.00 on furniture. Debtors' Schedule D does not disclose any secured obligation owing on furniture. Thus, it appears that Debtors might be unfairly discriminating among the class of unsecured creditors as prohibited by 11 U.S.C. § 1322(b)(1). For the reasons discussed herein, the Court will enter a separate order providing as follows;

IT IS ORDERED that Debtors' Motion for Valuation of Security filed July 19, 2007, is denied in part, and granted, in part; and the value of Capital One's allowed secured claim is fixed at $9,500.00

IT IS FURTHER ORDERED that confirmation of Debtors' First Amended Chapter 13 Plan filed August 8, 2007, is DENIED; and Debtors shall have ten (10) days to file a further amended Chapter 13 Plan.

IT IS FURTHER ORDERED that the hearing on confirmation of Debtors' further amended Chapter 13 plan shall be held **Tuesday, October 2, 2007**, **at 09:00 a.m.**, or as soon thereafter as the parties can be heard, in the 2ND FLOOR COURTROOM, FEDERAL BUILDING, 400 N. MAIN, BUTTE, MONTANA.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

20